UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x

UNITED STATES OF AMERICA,

      -against-                                              99 Cr. 654 (CM)

Alberto Orlandez-Gamboa,

             Defendant.
————————————————————————x

ORDER DENYING DEFENDANT'S MOTION FOR COMPASTIONATE RELEASE FILED
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) AND THE FIRST STEP ACT

McMahon, J.:

Orlandez-Gamboa is a drug kingpin.

On May 25, 2005, District Court Judge Thomas P. Griesa, sentenced Orlandez-Gamboa to a term of 480 months' imprisonment.

On April 19 2021, Orlandez-Gamboa filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)((1)(A) and the First Step Act.[1] The defendant argues that he should be granted compassionate release due to (1) his age (65 years) and health conditions, which he argues place him at high risk for contracting COVID-19 (Dkt. 111 at 56-57, 60-61); (2) harsh prison conditions stemming from the COVID-19 pandemic (*id.* at 9-15, 62-78, 80-87); and (3) the sentencing court's improper consideration of conduct prior to December 16, 1997, in violation of the rule of specialty and the terms of his extradition (*id.* at. 17-21, 29-47, 87-108). He also argues, citing *United States v. Maumau*, No. 08 Cr. 758, 2020 WL 806121 (D. Utah Feb.

---

[1] On April 19, 2021, the defendant mailed the instant *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. 111). A "supplemental" letter in further support of his motion was docketed on March 29, 2011 (Dkt. 110).

1

18, 2020), that the Court should reduce his sentence due to changes to the "sentencing structure" of 21 U.S.C. § 841 that have occurred since his sentencing. (Dkt. 110).

The Government opposes the motion.

Background

As set forth in the defendant's presentence investigation report, throughout the 1990s, and until his extradition from Colombia to the United States in August 2000, the defendant served as the leader of a large-scale narcotics trafficking organization – known as the "Caracol Organization" or the "North Coast Cartel" – exporting cocaine from Colombia around the world, including into the United States. *See* PSR dated May 6, 2003 at ¶¶ 11-12. The defendant was arrested by Colombian authorities in 1998 on charges of kidnapping and murder. *Id.* at ¶ 14. Despite his arrest, the defendant continued his drug trafficking with the help of associates both inside and outside of the Colombian prison where he was held. *Id.* at ¶¶ 16, 20. In July 1999, while the defendant was imprisoned in Colombia, the United States sought the defendant's arrest on criminal charges under United States law. *Id.* at ¶ 24. Subsequently, the United States formally requested the defendant's extradition. *Id.* That request was ultimately granted by the Colombian Supreme Court of Justice on August 8, 2000, and the defendant was extradited to the Southern District of New York on August 18, 2000. *Id.* at ¶ 25.

On March 10, 2003, the defendant pled guilty to: (1) conspiracy to import into the United States five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. § 963; (2) importation into the United States of five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B); and (3) conspiracy to launder money, in violation of 18

2

U.S.C. § 1956(h).

On May 25, 2005, Judge Griesa sentenced the defendant to a total of 480 months' imprisonment, an above-Guidelines sentence.

On June 1, 2005, the defendant appealed his sentence, arguing, in part, that the district court had violated the terms of his extradition by considering conduct before December 16, 1997. The Second Circuit affirmed the judgment. *United States v. Orlandez-Gamboa*, 185 F. App'x 86 (2d Cir. 2006) (summary order). The defendant subsequently filed, *inter alia*, a petition pursuant to 28 U.S.C. 2255 (Dkt. Oct. 31, 2007); a petition for a writ of audita querela (Dkt. 64); and a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 782 of the Sentencing Guidelines (Dkt. 71, 74), each of which was denied by the Court. (*See* Dkt. Feb. 11, 2009, Dkt. 69, 85).

The defendant, who is 65 years old, is currently incarcerated at Allenwood Low FCI. The Bureau of Prisons ("BOP") calculates his projected release date as September 10, 2033. There are currently zero inmates and staff at Allenwood Low FCI with positive COVID-19 cases.[2]

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but

---

[2] https://www.bop.gov/coronavirus/ (last accessed June 23, 2021).

in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.³ Until recently, this Court— and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."⁴ That changed on September 25, 2020, when the United States Court of

---

3 "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g.*, United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992).

4 The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the

Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States .v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

<u>Orlandez-Gamboa Has Exhausted His Administrative Remedies with the BOP</u>

On June 8, 2020, the defendant emailed an administrative request for compassionate release to the warden of Allenwood Low FCI. On June 11, 2020 the BOP denied his request. The

---

environment of a correctional facility and from which he or she is not expected to recover.
*Id.* § 1B1.13 comment (n.1).

defendant made further administrative requests for relief on June 16, 2020 and June 24, 2020. These requests were denied on June 29, 2020. In each submission to the BOP, the defendant cited his health and the risk of catching COVID-19 as the bases for the requested relief.

Accordingly, Orlandez-Gamboa has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

Present Motion Before the District Court

Orlandez-Gamboa health conditions do not give rise to extraordinary and compelling reasons for a reduction in sentence. Apart from his age, defendant's BOP medical records do not indicate any health conditions that the Center for Disease Control suggests could possibly increase his risk of severe illness from COVID-19. Moreover, his medical records indicate that he has been fully vaccinated against COVID-19 since February 3, 2021.

Even if Orlandez-Gamboa had met his threshold burden of demonstrating an "extraordinary and compelling" reason to be considered for compassionate release, the sentencing factors at 18 U.S.C. § 3553(a)—which the Court must consider in connection with a motion for a sentence reduction, see 18 U.S.C. § 3582(c)(1)(A)—counsel against a sentence reduction. Principal among those considerations are "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2) (A-C).

Orlandez-Gamboa's crimes are among the most serious, and Judge Griesa imposed a

sentence commensurate in length. As this Court found when it previously declined to reduce the defendant's sentence, "it is hard to envision a defendant who merits a sentencing reduction . . . less than leader of a violent cartel. Through his conduct, the defendant has injured innumerable people, both by contributing in a very significant way to the drug epidemic in this country and by threatening the safety and security of the public through his cartel's use of bribery, kidnapping, and assassinations, which helped fray the fabric of Colombian civil society." (Dec. & Order, Dkt. 85, at 7-8).

The defendant's argument that the sentencing court violated the terms of his extradition is not a proper basis for compassionate release. *See, e.g., United States v. Darco*, 377 F. App'x 61, 64 (2d Cir. 2010) (motion pursuant to 28 U.S.C. § 2255 is the proper basis for challenging the legality of a sentence). Regardless, this argument is meritless. On direct appeal, the defendant raised the same argument about the sentencing court's alleged violation of the terms of his extradition. The Second Circuit rejected that argument, holding that the "district court made clear that Gamboa would receive the same sentence whether or not pre-December 16, 1997 conduct was considered, and we find no fault with the factual findings that underlie this conclusion." *United States v. Orlandez-Gamboa*, 185 F. App'x 86 (2d Cir. 2006) (summary order). The defendant offers no new reasons to doubt that conclusion.

Nor do changes in the law since the defendant's sentencing justify a reduction in his sentence. In *Maumau*, the court granted a reduction in sentence for a defendant convicted of multiple counts under 18 U.S.C. § 924(c) whose sentence would have been lower were he sentenced today because of the First Step Act of 2018. *Maumau*, 2020 WL 806121, at *5 (noting that "[t]his court has repeatedly expressed its concern regarding the length of that sentence"). But

sentence commensurate in length. As this Court found when it previously declined to reduce the defendant's sentence, "it is hard to envision a defendant who merits a sentencing reduction . . . less than leader of a violent cartel. Through his conduct, the defendant has injured innumerable people, both by contributing in a very significant way to the drug epidemic in this country and by threatening the safety and security of the public through his cartel's use of bribery, kidnapping, and assassinations, which helped fray the fabric of Colombian civil society." (Dec. & Order, Dkt. 85, at 7-8).

The defendant's argument that the sentencing court violated the terms of his extradition is not a proper basis for compassionate release. *See, e.g., United States v. Darco*, 377 F. App'x 61, 64 (2d Cir. 2010) (motion pursuant to 28 U.S.C. § 2255 is the proper basis for challenging the legality of a sentence). Regardless, this argument is meritless. On direct appeal, the defendant raised the same argument about the sentencing court's alleged violation of the terms of his extradition. The Second Circuit rejected that argument, holding that the "district court made clear that Gamboa would receive the same sentence whether or not pre-December 16, 1997 conduct was considered, and we find no fault with the factual findings that underlie this conclusion." *United States v. Orlandez-Gamboa*, 185 F. App'x 86 (2d Cir. 2006) (summary order). The defendant offers no new reasons to doubt that conclusion.

Nor do changes in the law since the defendant's sentencing justify a reduction in his sentence. In *Maumau*, the court granted a reduction in sentence for a defendant convicted of multiple counts under 18 U.S.C. § 924(c) whose sentence would have been lower were he sentenced today because of the First Step Act of 2018. *Maumau*, 2020 WL 806121, at *5 (noting that "[t]his court has repeatedly expressed its concern regarding the length of that sentence"). But

the First Step Act does not apply to the defendant's offenses of conviction.[5] And although this Court found that, under Amendment 782 of the Sentencing Guidelines, the defendant's Guidelines would be lower were he sentenced today, this Court has already declined to reduce his sentence due to the serious nature of the offense—the Court finds no basis to alter its previous ruling. (Dkt. 85).

In sum, the defendant has failed to meet the substantial burden of showing extraordinary and compelling reasons for a reduction in his sentence, and, in any event, the Section 3553(a) factors weigh against granting such relief.

Defendant's motion for compassionate release is denied.

June 23, 2021

_____
Colleen McMahon
District Court Judge

---

[5] Although §401 of the FSA reduced mandatory minimum sentences applicable under 21 U.S.C. § 841 (b)(1)(A) and (B) for defendants with prior felony drug convictions, defendant was not sentenced under those provisions.