UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────── x

UNITED STATES OF AMERICA,

    -against-                                           99 Cr. 654 (CM)

Alberto Orlandez-Gamboa,

             Defendant.
───────────────────────────────── x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/10/2025

### ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE FILED PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)

McMahon, J.:

On May 25, 2005, the late Thomas P. Griesa, U.S.D.J., sentenced Orlandez-Gamboa—the leader of a large-scale narcotics trafficking organization responsible for creating mayhem and exporting cocaine from Colombia to countries around the world—to a term of 480 months' imprisonment. Orlandez-Gamboa's projected release date, which includes the "good time" credit reduction, is September 10, 2032.

Before the Court is another in a series of motions by Orlandez-Gamboa asking the Court to grant him compassionate release, pursuant to 18 U.S.C. § 3582(c)((1)(A). He argues in his latest motion that he should be resentenced to time-served pursuant to recent amendments to the United States Sentencing Guidelines, specifically, Section 1B1.13(b)(6)— the provision providing possible relief from an "unusually long sentence." (Defendant's Motion, Dkt. 119). "Mr. Gamboa hereby humbly and respectfully prays that the court grant this 70 year old man his freedom so that he may finally return back home to his family and country in light of the Sentencing

1

Commission's New Substantive Rule of law provisions created under U.S.S.G. §1B1.13(b)(6)." (Defendant's Rely, Dkt. 122).

The Government opposes the motion.

The motion is denied.

Background

As set forth in the defendant's presentence investigation report, throughout the 1990s, and until his extradition from Colombia to the United States in August 2000, the defendant served as the leader of a large-scale narcotics trafficking organization – known as the "Caracol Organization" or the "North Coast Cartel" – exporting cocaine from Colombia around the world, including into the United States. *See* PSR dated May 6, 2003 at ¶¶ 11-12. The defendant was arrested by Colombian authorities in 1998 on charges of kidnapping and murder. *Id.* at ¶ 14. Despite his arrest, the defendant continued his drug trafficking with the help of associates both inside and outside of the Colombian prison where he was held. *Id.* at ¶¶ 16, 20. In July 1999, while the defendant was imprisoned in Colombia, the United States sought the defendant's arrest on criminal charges under United States law. *Id.* at ¶ 24. Subsequently, the United States formally requested the defendant's extradition. *Id.* That request was ultimately granted by the Colombian Supreme Court of Justice on August 8, 2000, and the defendant was extradited to the Southern District of New York on August 18, 2000. *Id.* at ¶ 25.

On March 10, 2003, the defendant pled guilty to: (1) conspiracy to import into the United States five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. § 963; (2) importation into the United States

of five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B); and (3) conspiracy to launder money, in violation of 18 U.S.C. § 1956(h).

On May 25, 2005, Judge Griesa sentenced the defendant to a total of 480 months' imprisonment, an above-Guidelines sentence.

In the years since his conviction, the defendant has sought to challenge his sentence in a variety of ways. He took a direct appeal of his sentence, which the Second Circuit affirmed on June 13, 2006. *United States v. Orlandez-Gamboa*, 185 F. App'x 86 (2d Cir. 2006). On October 31, 2007, the defendant filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Judge Griesa denied that motion on February 11, 2009, and the defendant's attempts to appeal that denial were rejected by the Circuit.

A few years later, on February 3, 2014, the defendant filed a petition for a writ of *audita querela*, which Judge Griesa denied on August 5, 2015.

Next, on February 26, 2016, the defendant filed what was styled as a "Motion for Status of Petitioner's Motion for Reduction of Sentence." (Dkt. No. 73). Judge Griesa treated this filing as a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2), and appointed counsel to brief the motion on the defendant's behalf. (Dkt. No. 74). In his motion, the defendant argued that Amendment 782 to the Sentencing Guidelines reduced his Guidelines range and that he should be resentenced to the bottom of that range (262 months' imprisonment) because: (i) he has no prior criminal record; (ii) he is a Colombian national and, as a result, he is ineligible for early release programs, his deportation following completion of his sentence is certain, and he will therefore

3

likely spend additional time in immigration custody; and (iii) his post-sentencing conduct in prison, including attending various training programs, earning his GED, working as a Unit Orderly, his satisfaction of financial obligations to the court, and the revision of his security classification by the BOP from medium to low. (Dkt. No. 80).

Unfortunately, Judge Griese fell ill prior to ruling on Orlandez-Gamboa's motion. The Clerk of the Court reassigned Orlandez-Gamboa's case to this Court's docket for all purposes, which included deciding the open motion.

On June 22, 2017, the Court denied the motion, concluding that although the defendant was eligible for a sentence reduction under Section 3582(c)(2), the applicable Section 3553(a) factors continued to justify the sentence imposed. (Dkt. No. 85).

The defendant appealed, which appeal the Second Circuit dismissed on November 22, 2017 as lacking an arguable basis in law or fact. (Dkt. No. 90).

On January 29, 2018, the defendant filed a nearly identical Section 3582 motion. (Dkt. No. 91). On January 31, 2018, this Court denied the motion for the same reasons that it had denied the earlier Section 3582 motion, Dkt. No. 92, and the Circuit affirmed, Dkt. No. 95.

On November 21, 2018, the defendant another Section 3582 motion, Dkt. No. 96, which this Court denied for the same reasons it had denied the preceding Section 3582 motions, Dkt. No. 97.

The defendant then filed and withdrew a series of motions, petitions, and appeals before filing yet another Section 3582 motion seeking compassionate release based on (i) COVID-19, (ii) the sentencing court's improper consideration of conduct prior to

December 16, 1997, in violation of the rule of specialty and the terms of his extradition, and (iii) changes to the "sentencing structure" of 21 U.S.C. § 841 that occurred subsequent to his sentencing. (Dkt. Nos 110-111). This Court denied the motion, finding—again—that the Section 3553(a) factors continued to justify the sentence imposed. (Dkt. 115). The Circuit affirmed this Court's decision on appeal. (Dkt. 118).

On September 25, 2024, the defendant filed the instant Section 3582 motion.

Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed except," as relevant here:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.*

As the Second Circuit has explained, this statute establishes "three requirements." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021). *First*, the defendant must have exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). *Second*, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Even where this high bar is met, it is just "[t]he threshold

5

question," *United States v. Daugerdas*, 613 F. Supp. 3d 807, 809 (S.D.N.Y. 2020), because *third*, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and determine that any reduced term of imprisonment would result in a sentence that is sufficient to accomplish the law's mandate to, among other things, "reflect the seriousness of the offense, . . . promote respect for the law, and . . . provide just punishment for the offense." 18 U.S.C. §§ 3582(c)(1)(A); 3553(a)(2)(A).

The statute also "sets out a fourth requirement: that the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"[2] *Keitt*, 21 F.4th at 71 n.2 (quoting 18 U.S.C. § 3582(c)(1)(A)). The relevant Sentencing Guidelines policy statement, U.S.S.G. § 1B1.13, sets forth binding requirements that must be met before a court can reduce a sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring reduction in sentence to be "consistent with applicable policy statements issued by the Sentencing Commission"). As relevant here, Section 1B1.13(b)(6) provides as follows:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

As the proponent of the motion, the defendant bears the burden of proving that he is entitled to the requested relief under Section 3582(c)(1)(A). *See United States v. Butler*,

6

970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction." (citing *Butler*)); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

### Orlandez-Gamboa Has Exhausted His Administrative Remedies with the BOP

Defendant filed a request with the warden of Allenwood Low on June 20, 2024. (Def. Mtn., Dkt. 119, Exh. F). However, there is no indication that the warden ever responded to that request. Nor does the Government argue that defendant has failed to exhaust his administrative remedies.

Accordingly, Orlandez-Gamboa is deemed to have exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

### Present Motion Before the District Court

Orlandez-Gamboa's reliance on Section 1B1.13(b)(6) in support of his early release motion is unavailing. Moreover, even if Section 1B1.13(b)(6) did provide a basis for this Court to consider reducing his sentence, the Section 3553(a) factors continue to counsel strongly against any reduction.

*Section 1B1.13(b)(6) is Inapplicable to the Defendant*

By its plain terms, Section 1B1.13(b)(6) is only applicable if the defendant (i) "received an unusually long sentence"; (ii) "has served at least 10 years of the term of imprisonment"; and (iii) has identified "a change in the law . . . [that] would produce a gross disparity between the sentence being served and the sentence likely to be imposed at

7

the time the motion is filed." Even then, the identified change in law only constitutes "extraordinary and compelling reasons" "after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6).

Orlandez-Gamboa has not identified a change in law that would produce a gross sentencing disparity. To the extent the defendant claims that that the law prohibits holding a defendant accountable for the quantity of narcotics trafficked by the overall conspiracy of which he is a member (Mot. 11-12), he is wrong. *See United States v. Payne*, 591 F.3d 46, 70 (2d Cir. 2010) ("The defendant was accountable for all reasonably foreseeable quantities of crack distributed by the conspiracy of which he was a member."); *United States v. Podlog*, 35 F.3d 699, 706 (2d Cir. 1994) ("A court is entitled to consider all transactions engaged in by a defendant or by his coconspirators if the transactions were either known to him or reasonably foreseeable to him. Even quantities of narcotics sold prior to the defendant's entry into a conspiracy may be included for sentencing purposes if he knew or reasonably should have known about those quantities.").

If the defendant's argument is, instead, that the drug quantity used to calculate his Guidelines range had to have either been found by a jury beyond a reasonable doubt or expressly admitted by the defendant (Mot. 12-16), this too is wrong. *Podlog*, 35 F.3d at 706 ("The Government need only establish the amount of narcotics foreseeable to the defendant by a preponderance of the evidence and the district court's findings in this regard will not be disturbed unless clearly erroneous."). It is true that where application of a statutory mandatory minimum or increased statutory maximum is based on a

threshold drug quantity, that quantity must either have been found by a jury beyond a reasonable doubt or admitted by the defendant during his guilty plea. But the applicable statutory threshold here is five kilograms, *see* 21 U.S.C. § 960(b)(1)(B), and the defendant admitted to that threshold as part of his plea, *see* Sent. Tr. 43:6-7 ("Your honor, the pleas on those first two counts the defendant made were 5 kilograms."); *id.* 47:20—48:2 ("Mr. Gamboa in his guilty plea allocution admitted . . . the conspiracy was for 5 kilograms and more.").

The defendant also appears to rely on Amendment 782 to the Guidelines, which he argues would reduce his Guidelines range if he were sentenced today. (Mot. 18). But this Court already considered that argument and, even assuming that the defendant's Guidelines range was decreased by this amendment, denied the defendant's earlier Section 3582 motion finding that the Section 3553(a) factors continued to justify the sentence imposed. (Dkt. No. 85).

Finally, the defendant relies on Amendment 821 to the Guidelines, which, as relevant here created Section 4C1.1, allowing for a two-point offense level reduction for defendants with zero criminal history points who also satisfy certain enumerated criteria. (Mot. 18-19). If sentenced today, the defendant would not be eligible for this reduction because: (i) the defendant was an organizer or leader of the charged criminal activity and received an adjustment under Section 3B1.1, *compare* § 4C1.1(a)(10) *with* Sent. Tr. 52:23—53:2, and (ii) the defendant's offenses involved the use of firearms, *compare* § 4C1.1(a)(7) *with* Sent. Tr. 52:21-22.

Accordingly, Orlandez-Gamboa has failed to establish that Section 1B1.13(b)(6)

provides an extraordinary and compelling basis to reduce his sentence. .

*The Section 3553(a) Factors Continue to Justify the Defendant's Sentence*

Even if Orlandez-Gamboa's had established that Section 1B1.13(b)(6) was applicable to him and provided an arguable extraordinary and compelling basis to consider reducing his sentence, his motion must nonetheless be denied since Orlandez-Gamboa has failed, as he has in his previous motions, to show—as he must—that the Section 3553(a) factors favor a sentence reduction.

As in prior motions, Orlandez-Gamboa argues that release is warranted because he has served a long time in prison and is a totally rehabilitated person. He cites, as he has in the past, that he has maintained close relationships with his children and other family members (indeed, members of his family have submitted letters of support speaking to his good person), has been helpful friend to fellow inmates, has participated in various BOP educational programs, has satisfied his financial obligations to the Court, and has had his security classification by the BOP reduced from medium to low. (Mot. 19-21).

But as I said when weighing the Section 3553(a) factors in connection with one of Orlandez-Gamboa's earlier pleas for compassionate release:

> Even crediting what the defense describes as the defendant's productive use of his time in prison (a striking contrast to his continued engagement in drug offenses from prison in Colombia), it is hard to envision a defendant who merits a sentencing reduction— let alone a reduction to the bottom of the amended Guidelines range—less than the leader of a violent cartel. Through his conduct, the defendant has injured innumerable people, both by contributing in a very significant way to the drug epidemic in this country and by threatening the safety and security of the public through his cartel's use of bribery, kidnapping, and assassinations, which helped fray the

fabric of Colombian civil society. Defendant's good behavior in prison, however laudable, is insufficient to justify a reduction in his sentence."

(*Id.* at 7-8).

Defendant's motion for compassionate release is denied.

January 10, 2025

Colleen McMahon
District Court Judge

11